AO 106 (Rev. 04/10) Application for a Search Warrant

## UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
Fayetteville Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

SEP 1 5 2021

JAMIE GIANI, Clerk

By _____ Deputy Clerk

In the Matter of the Search of )
Property located at 1725 West Bedford )
Loop, Apt. 10, Fayetteville Arkansas )

Case No. 5:21CM 56

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* **Property located at 1725 West Bedford Loop, Apt. 10, Fayetteville, Arkansas, more particularly described on "Attachment A".**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See "Attachment B".**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(B) | Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts: **See Affidavit of HSI Special Agent Gerald Faulkner**

■ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Gerald Faulkner, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/15/2021

City and state: Fayetteville, Arkansas

*Judge's signature*

Christy Comstock, United States Magistrate Judge
*Printed name and title*

## Affidavit in Support of Application for Search Warrant

I, Gerald Faulkner, being duly sworn, depose and state as follows:

1.       I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with HSI since April 2009. As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.       This Affidavit is being submitted in support of an application for a search warrant for the premises located at **1725 West Bedford Loop, Apartment 10, in Fayetteville, Arkansas 72701 the "SUBJECT PREMISES"**. As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## **Statutory Authority**

3.       This investigation concerns alleged violations of Title 18, United States Code,

Sections 2252A and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child

Pornography.

a)  18 U.S.C. § 2252A(a)(2)(B) prohibits a person from knowingly receiving or distributing any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

b)  18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

c)  The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

d)  The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

e)  The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image

that has been transmitted by any means, whether or not stored in a permanent format.

f)  The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

g)  The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## Computers and Child Pornography

4.    Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop ad reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and

required secure storage to prevent exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-base/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

5. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which those who seek out child pornography are able to obtain this material. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by those who seek to obtain access to child pornography in these ways:

6. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

7.      The Internet allows any computer to connect to another computer.  By connecting to a host computer, electronic contact can be made to literally millions of computers around the world.  A host computer is one that is attached to a network and serves many users.  Host computers are sometimes operated by commercial Internet Service Providers (ISPs), such as Xfinity, Verizon, AT&T and Cox, which allow subscribers to connect to a network which is, in turn, connected to the host systems.  Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks.  In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

8.      The Internet allows users, while still maintaining anonymity, to easily locate other individuals with similar interests in child pornography; and websites that offer images of child pornography.  Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography.  These communication links allow contacts around the world as easily as calling next door.  Additionally, these communications can be quick, relatively secure, and as anonymous as desired.  All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet.  Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

9.      The computer's capability to store images in digital form makes it an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as a "hard drive") used in home computers has grown tremendously with the last several years.

Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

10.     It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to internet customers by their ISP's. Although IP numbers are capable of changing over time, it is common for only one (1) unique IP number to be assigned to a given customer's computer at any given time. However, some IP numbers such as a Natting IP address can share multiple users at the same time but a specific utilized telephone number can further identify them. Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

11.     Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an Internet Protocol or IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

12.     Law Enforcement uses specialized peer to peer software to locate computers offering to participate in the distribution of child pornography images and files over the Gnutella file sharing network in Arkansas. The Gnutella network is an internet based network that allows

millions of users to share (send and receive) files worldwide using publically available "peer to peer" file sharing programs such as Shareza, Limewire, and Frostwire.

13.     While examining the Gnutella peer-to-peer file-sharing network, computers on the Gnutella network have software installed on them that facilitates the trading of images. The software, when installed, allows the user to search for pictures, movies and other digital files by entering text as search terms. The search results presented to the user allow the user to select a file and then receive that file from other users around the world. Often these users can receive the selected digital file from numerous sources at once. The software can balance the network load and recover from network failures by accepting pieces of the digital file from different users and then reassembling the digital file on the local computer.

14.     The Gnutella network can only succeed in reassembling the digital file from different parts if the parts all come from the exact same digital file. Multiple persons sharing one digital file can deliver different pieces of that file to the local software and the local software can ensure that a complete and exact copy can be made from the parts. Through use of the software, it has been confirmed that different copies of the same digital file can be named differently.

15.     Computer software has different methods to ensure that two files are exactly the same. Your Affiant knows that the method used by the Gnutella network involves a file encryption method called Secure Hash Algorithm Version 1 or SHA1. The SHA1 method is the Secure Hash Algorithm (SHA), developed by the National Institute of Standards and Technology (NIST), along with the National Security Agency (NSA), for use with the Digital Signature Standard (DSS) as specified within the Secure Hash Standard (SHS). The United States of America has adopted the SHA-1 hash algorithm described herein as a Federal Information Processing Standard. Digital files can be processed by this SHA1 process resulting in a digital signature. By comparing these

signatures, it can be concluded that two files are identical with a precision that greatly exceeds certainty.

16. Your Affiant knows that the Gnutella software system uses the SHA1 digital signature to verify the unique identity of individual files. Users attempting to trade files on the Gnutella file-sharing network could choose to place files from their local computer in a shared file directory. If that same user then starts the Gnutella software, that local computer could then calculate the SHA1 signature for each shared file and provide that information to other users wishing to obtain those files.

17. Entering search terms in the Gnutella software can result in a list of SHA1 digital signatures from which to choose. By using this type of search, law enforcement officers can compare the offered SHA1 signatures with SHA1 signatures known to belong to movies or images of known child pornography. Once a matching set of digital signatures are identified, publicly available software can be used to request a list of Internet network computers that are reported to have the same images for trade or are participating in the trade of known images of child pornography. This feature allows law enforcement officers to conduct undercover operations that involve images known to be actual and identified child pornography involving identified children.

18. Additionally, your Affiant knows that P2P software may display the Globally Unique Identifier (GUID) identification number of computers offering to share files on the network. A Globally Unique Identifier, or GUID, is a unique reference number used in software applications. This GUID number is produced when some P2P software applications are installed on a computer. While each generated GUID is not guaranteed to be unique, the total number of unique keys is so large that the probability of the same number being generated twice is negligible. As such, based on an on-site comparison of GUID's, your Affiant can quickly determine with a

high degree of certainty if a computer located on scene is in fact the "suspect" computer offering to share files over the internet.

## Summary of Investigation to Date

19.     On or about June 16, 2021, while utilizing Internet Crimes Against Children (ICAC) software tools, your Affiant identified a particular computer or electronic device in the Northwest Arkansas area using an IP address of **184.190.104.60** that was making numerous files of suspected child pornography available for download on the Gnutella network. The ICAC software program recorded the computer or electronic device located at **184.190.104.60** had been making these files of suspected child pornography available from the time period between approximately May 23, 2021 through August 8, 2021. Utilizing ICAC software tools, your Affiant conducted a browse of the files being made available for download by the computer or electronic device located at **184.190.104.60** and obtained a file list for the time period of May 23, 2021 through August 8, 2021. Approximately three-thousand, one hundred and twenty-six (3,126) files were flagged or captured from the P2P networks Gnutella and EDonkey during the reviewed timeframe. The list included file attributes including filename, download dates/times, file size, and Hash values. Your Affiant observed the majority of the files on this list contained names or titles consistent with child pornography such as: "Pthc-Webcam-Sex-12Yo Lesbians Schoolgirls Omegle skype", "Dog Licks Her Pussy – Preeteen Webcam Justyna" and "Webcam 8yo Prepares For Dad (Pthc)". Your Affiant's training and experience in child exploitation investigations over the last eleven (11) years has revealed that the term "PTHC" stands for preteen hardcore.

20.     An internet search on the origin of the IP address **184.190.104.60** found it to be issued to the internet service provider Cox Communications. A federal summons was issued to Cox Communications in reference to IP address **184.190.104.60**. Documents received on or about

August 3, 2021, from Cox Communications in reference to IP address **184.190.104.60** identified the IP as being "Active" and assigned to Joshua ALVAREZ at 1725 West Bedford Loop, Apartment 10 located in Fayetteville, Arkansas 72701, the **SUBJECT PREMISES**. The subscriber information also listed a contact phone number ending in 4711.

21.     Additional open-source database queries conducted by your Affiant found ALVAREZ's subscriber address was located at the Bedford Loop Apartment Complex in Fayetteville, Arkansas. A federal summons was issued to the managing company, Broad Management Group, for additional information on the tenants located at the **SUBJECT PREMISES**. Documents received on or about August 6, 2021, from Broad Management Group identified the current primary resident as being Josh ALVAREZ with a listed "girlfriend" of Mekenzy Calico. A reviewed document showed there is agreed upon leasing dates between March 16, 2021 and March 15, 2022.

22.     Your Affiant reviewed additional documents provided by Broad Management Group that showed ALVAREZ is believed to be Josh P. Alvarez with a date of birth in 1992 and issued the Social Security Administration Number ending in the last for digits 0759. At the time of his application and signing of the rental agreement, ALVAREZ showed to have previous residential addresses in Huntsville, Arkansas; Alum Creek, West Virginia; Poca, West Virginia and Belleville, Illinois. ALVAREZ also listed on the Rental Application as having the same contact phone number ending in 4711 as depicted in the Cox Communications subscriber account assigned to IP address **184.190.104.60.**

23.     In August 2021, your Affiant sought assistance from the HSI Cyber Crimes Center (C3) in cross-referencing the Sha1 hash values identified through the ICAC software tools which were contained either wholly or in part on the computer or electronic device located at

**184.190.104.60** through a law enforcement library of known and previously identified/reviewed images and videos containing child pornography.

24. On or about August 12, 2021, your Affiant received approximately six (6) matching Sha1 hash files from the HSI C3 that were contained either wholly or in part on the computer or electronic drive located at **184.190.104.60.** Your Affiant then viewed three (3) of the flagged files the IP address **184.190.104.60** was making publicly available, confirmed them to be videos of child pornography as defined in Title 18, United States Code, Section 2256 and more particularly described them as follows:

(a) **Hash/File Name: 8F3EACDCA849A0EA6B4C274E77430D7E42B49BE3**

*This video is approximately 11:03 minutes in length and depicts a prepubescent minor female, approximately eight (8) to eleven (11) years of age laying on a bed with her hands tied to the headboard and naked from the waist down exposing her vagina. An adult's hand, later identified to be female, is seen inserting her finger into the minor female's vagina until what is believed to be blood is seen on the child's inner thighs. The remaining portion of the video shows the adult female and minor child performing oral sex on one another.*

(b) **Hash/File Name: 28124621A0D41383E6B86225486501BEEC9D920D**

*This video is approximately 9:29 minutes in length and depicts two completely naked minor females, approximately three (3) to five (5) years of age and five (5) seven (7) years of age sitting on a bed. A naked adult female then enters the screen and begins performing oral sex on the minor female children. Throughout the course of the video, the naked minor children's breast and vagina are exposed to the camera.*

**(c) Hash/File Name: E69617E0EE77A8ED926E26EFD06C828F9996DAD1**

> *This video is approximately 1:05 minutes in length and depicts what is believed to be a completely naked adult female sitting on a bed performing oral sex on a completely naked minor boy, approximately four (4) to six (6) years of age. The minor boy's penis is exposed to the camera during the video.*

25.     In September 2021, pursuant to the ongoing investigation, your Affiant received a police report from the Fayetteville, Arkansas Police Department in reference to criminal misconduct alleged against ALVAREZ and his girlfriend, Mekenzy Calico in June 2021. According to interviews contained within the incident report, ALVAREZ and Calico are believed to share a blue Jeep Sport Utility Vehicle (SUV) that, at the time, was getting mechanical work done so someone had been providing them transportation.  On September 6 through September 10, 2021, your Affiant conducted both mobile and stationary surveillance of the **SUBJECT PREMISES** with negative results of locating a blue Jeep SUV located in the parking lot of the apartment complex or seeing anyone enter/exit apartment 10.  On or about September 10, 2021, your Affiant again contacted the Broad Management Group who confirmed ALVAREZ was still residing at 1725 West Bedford Loop, Apartment 10 located in Fayetteville, Arkansas 72701.

## Conclusion

26.     *Necessity of On-site and Off-site examinations of entire computers or storage media.*  Based on my experience and the training and experience of other agents, many of the items sought in this Affidavit may be stored electronically.  Based on my experience and consultation with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium.  Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other

computer or storage medium at the same location. In addition, based on my experience, I know, that while on-site examinations might provide basic evidence of the alleged crime, the execution of most warrants involving computerized information requires special agents to seize a portion or all of a computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

(a) Volume of evidence and time required for examination: Computer storage devices such as hard disks, diskettes, tapes and laser disks, can store the equivalent of thousands of pages of information. This sorting process can take up to several months to complete, depending on the volume of data stored. Therefore, in most cases, reviewing that information for items described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt solely via an on-site examination.

(b) Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a variety of forensic tools. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from

destructive code embedded in the system such as a "booby trap"), a controlled environment, in most instances, is essential to a complete analysis.

27.     Therefore, authorization is sought in this application to seize, image, or otherwise copy any and all digital media as set forth in attachment "B" that is found on the premises to be searched, in order to examine those items for evidence. Furthermore, authorization is sought herein to conduct both on-site and subsequent off-site examinations of the electronic evidence as authorized by Rule 41(e)(2) of the Federal Rules of Criminal Procedure. If it is determined that data has been seized that does not constitute evidence of the crimes detailed herein, the government will return said data within a reasonable time.

28.     Based on my experience and the training and experience of other agents involved with this investigation, your affiant knows that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexual explicit material. Among the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement. Because several people can share the **SUBJECT PREMISES** as a residence, it is possible that the **SUBJECT PREMISES** will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

29.     Based on the foregoing information, probable cause exists to believe there is located at **1725 West Bedford Loop, Apartment 10, in Fayetteville, Arkansas 72701**, the **SUBJECT PREMISES**, evidence of violations of Title 18, United States Code, Section 2252, et seq. Your Affiant prays upon his honorable court to issue a search warrant for the **SUBJECT PREMISES** for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Section 2252A(a)(2)(B), Receipt of Child Pornography and Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography.

Gerald Faulkner, Special Agent
Homeland Security Investigations

Affidavit subscribed and sworn to before me this **15th** day of September, 2021.

Honorable Christy Comstock
United States Magistrate Judge

## ATTACHMENT A

### Description of Property To Be Searched

Any and all structures and outbuildings to include vehicles located on the property or arriving on the property and curtilage (associated to suspect apartment only) of **1725 West Bedford Loop, Apartment 10, in Fayetteville, Arkansas 72701**, the **SUBJECT PREMISES**. More particularly described as a two-story apartment building constructed of off white vinyl/wood siding. Affixed to the West side of the apartment building complex are the clearly visible address numbers "1725", black in color and approximately 6 inches in height. The "10" apartment number is located directly on a dark brown front door which faces South towards West Bedford Loop. The suspect address is the last unit located on the second floor of the Southeast side of the complex.



## ATTACHMENT B

### Items To Be Searched For and Seized

a.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

i.      Any computer, cellular phone, computer system, smart phones, computer tablets, and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, web cams, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to cellular telephones, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

ii.     Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

iii.    Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

iv.     Motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b.      Contact information or correspondence (online conversations/ Chats) pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, and/or the sexual solicitation of minors that were transmitted or received using a computer, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

i.      Electronic mail, internet chat logs, and electronic messages, social media messages, internet posts, blogs or any other internet-based contacts or communications, log in information to child exploitation forums, websites, and chatrooms; Gnutella;

ii.     Envelopes, letters, books, ledgers, diaries, notebooks, notes, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or the solicitation of sexual conduct;

c.     Emails, log in information, credit card information, etc showing ownership or use of the premises or device, subscriptions to internet or phone services, or account information and subscriptions to online applications known for child exploitation, paid sites, and social media;

d.     Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.

e.     Any and all computer hardware, to include data-processing devices containing central processing units, such as "desktop", "tower", "laptop" and "notebook" computers, hand-held electronic organizers, "personal digital assistants" and iPod's/iRiver's; "routers", "switchers" "Cellular Phones/Smart Phones" "Tablets" or any similar device which facilitates communication by sending transmissions to intended recipients and has the capability of creating logs; internal and external storage devices, including magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices such as smart-card readers. In addition, peripherals, equipment that send data to, or receive data from, computer hardware, but do not normally store user data, such as keyboards, mice, printers, scanners, plotters, video display monitors, modems, cables, and certain types of facsimile machines.

f.     Any and all computer software and storage media to include any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information, such as diskettes, CD-ROM's, CD-R's, CD-RW's, DVD's, DVD-R's, DVD-RW's, magnetic tapes, ZIP disks, JAZ disks, Peerless disks, SparQ disks, ORB disks, optical disks, smart-cards, EPROMS, and digital memory media such as CompactFlash, SmartMedia, Sony Memory Sticks, and USB "thumb" or "key" drives, in addition to computer photographs, Graphic Interchange formats and/or photographs, cameras, digital cameras, slides, scanners or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in children, sexual activity with children, or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica.

g     Any and all computer-related documentation to include written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items. In addition to passwords, to include alphanumeric strings, pass-phrases, password files, and similar decryption codes necessary to access data that is encrypted or otherwise inaccessible. Any and all security devices, to include physical keys,

encryption devices, "dongles", and similar physical items needed to gain access to associated computer hardware.

h.       Any and all address books, mailing lists, lists of names and addresses of minors, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or minor contacted for sexual purposes.

i.       Any data that is encrypted and unreadable will not be returned unless law Enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offense specified above.

j.       In searching the data, the computer personnel may examine and copy all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized. In addition, the computer personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized. Finally, the computer forensic personnel may access any and all applications, email accounts, social media, internet search terms and history, and/or documents contained upon any said device to determine relevancy.